GROCE v. PONDER.

Dower—Mortgages.—Where a husband buys lands upon which there is a mortgage which it is agreed he shall pay, and the transaction is arranged by his taking a deed to the land and at the same time giving a mortgage to the holder of the first mortgage which is marked satisfied, the transactions being simultaneous, there is no

such seizin in the husband as will give the wife dower as against the mortgage lien.

· Before KLUGH, J., Greenville, August, 1901.    Affirmed.

Foreclosure by M. E. Groce against Julia Ponder, wife, and other heirs at law of James Ponder.    From Circuit decree denying the claim of Julia Ponder for dower, defendants appeal.

*Messrs. Wm. H. Irvine* and *Adam C. Welborn,* for appellants.    *Mr. Welborn* cites: 8 S. C., 98; 1 Scrib. on Dower, 555, 556; 11 Rich., 423; 1 Bay, 312; 4 McC., 346; 2 S. C., 283.

*Messrs. Simpson & Bomar,* contra, cite: 1 Bay, 312; 1 Hill, 200; 4 McC., 346; 6 Rich., 266; 2 S. C., 283; 8 S. C., 87; 1 Scrib. on Dower, 273; 12 S. C., 486; 22 S. C., 151; 42 S. C., 389.

March 24, 1902.    The opinion of the Court was delivered by

MR. JUSTICE POPE.    James Ponder, the husband of the defendant, Julia Ponder, and father of the defendants, Andrew J., William F. and Thomas J. Ponder, on the 17th day of June, 1891, gave to the plaintiff his note for $1,590, with interest thereon, and secured the payment of the note by his deed by way of mortgage upon 186 1-4 acres of land, executed cotemporaneously with the aforesaid.    A credit of ten years was provided in the note.    The said James Ponder departed this life in the year 1892.    After the maturity of the said note an action was brought to foreclose the mortgage against the widow and the three children of James Ponder, deceased.    No objection was urged by these defendants to the debt, the mortgage and the foreclosure, but Mrs. Julia Ponder contended that she was entitled to dower in said lands.    An order of reference to the master for Greenville County to hear and determine all the issues was passed by his

Honor, Judge Benet. After hearing the testimony, said master reported in favor of the widow's claim of dower. On exceptions, his Honor, Judge Klugh, upset the report in this particular alone. The defendant, Mrs. Julia Ponder, now appeals from so much of the decree as denies her claim of dower. It seems from the record that the following facts were established before the master: A. J. Ponder having died in or about the year 1874, leaving his widow, Martha Ponder, and his two sons, Thomas and James, as his only heirs at law and next of kin. Said A. J. Ponder had at least two tracts of land. He owed one John Wheeler a debt for money borrowed—money which was used by A. J. Ponder for his relief from a prosecution for a violation of the United States revenue laws. The widow of A. J. Ponder and his son, Thomas, as plaintiffs, with James Ponder as defendant, instituted an action for partition of A. J. Ponder's lands in the probate court for Greenville, S. C. By the judgment of the probate court, the widow, Mrs. Martha Ponder, received a deed for the 186 1-4 acres of land now under considera-tion. Thomas Ponder received land also, and obligated himself to pay the debt due to John Wheeler (which had be-come the property of his daughter, Mrs. M. E. Groce). Thomas Ponder gave his note and executed a mortgage on his land to Mrs. M. E. Groce for the John Wheeler debt. The widow of A. J. Ponder (Mrs. Martha Ponder) gave her note for one-half of the Groce note to her son, Thomas Pon-der, and secured its payment by a mortgage upon her 186 1-4 acres of land. Probably advancing years and maybe the solicitations of her son, James Ponder, caused Mrs. Martha Ponder to wish to sell her 186 1-4 acres of land to her son, James Ponder. But to do this so as to give James Ponder title, provision had to be made to pay the two mortgages held by Thomas Ponder on that 186 1-4 acres of land, and Thomas Ponder had to pay off his debt to Mrs. M. E. Groce. So the matter then stood. Mrs. Groce, whose debt was $1,775, on the 17th June, 1891, agreed that she would re-lease her debt and mortgage on the land of Thomas Ponder,

if James Ponder would give his note and a mortgage on the 186 1-4 tract of land simultaneously with the conveyance of said land to James Ponder by his mother, Mrs. Martha Ponder, as a part of the same transaction. Thomas Ponder agreed to mark his two mortgages on his mother's land (the 186 1-4 acres) satisfied, the moment Mrs. M. E. Groce marked her mortgage, for about $1,775, satisfied; which two mortgages held by Thomas on Mrs. Martha Ponder's land amounted to about $1,775. All these parties, on the 17th June, 1891, met at the residence of D. S. Hinson to carry out this arrangement by having Mr. Hinson draw the necessary papers. At first the parties thought of having Mrs. Martha Ponder to convey the 186 1-4 acres to Thomas Ponder; then for Thomas Ponder to convey the land to Mrs. M. E. Groce, and then for Mrs. M. E. Groce to convey the land to James Ponder—taking the note and mortgage of James Ponder for the $1,775 due to her. They reasoned that in this way the claim of dower by Mrs. Julia Ponder, as wife of James Ponder, could not arise until the $1,775 was paid, it being the purchase money. Subsequently, however, these parties agreed that the same object could be accomplished by having Mrs. Martha Ponder convey the land direct to James Ponder, he at the same time and as a part of the same transaction executing his note and mortgage to Mrs. M. E. Groce for $1,775. So, on the 17th June, 1891, Mrs. Martha Ponder conveyed by deed her 186 1-4 acres of land to James Ponder at the price of $3,000. So, on the 17th June, 1891, Mrs. M. E. Groce marked satisfied her note and mortgage on Thomas Ponder for $1,775. So, on the 17th June, 1891, Thomas Ponder marked his two mortgages executed by Martha Ponder on the 186 1-4 acres of land satisfied. So, on the 17th June, 1891, James Ponder executed his note to Mrs. M. E. Groce for $1,590 (having paid the difference between $1,775 and $1,590 in cash to Mrs. Groce) and executed his mortgage to her on the 186 1-4 acres of land to secure his said debt. All these matters were intended as one and the same transaction.

To state the differences between the master and the Circuit Judge succinctly, the master holds that as James Ponder and the defendant, Julia Ponder, had been married before the 17th June, 1891, and James Ponder having died in 1892, seized of this land—that there was "marriage, seizin, death, dower." In other words, he holds that as James Ponder was seized of the land before he mortgaged it to the plaintiff, and as plaintiff's debt and lien by mortgage was not for the purchase money, therefore, the defendant, Julia, has dower in the lands. While, on the contrary, the Circuit Judge holds that plaintiff's debt and lien by mortgage was either for the purchase money or for a debt and lien in the nature of purchase money, and hence, the defendant, Julia Ponder, had no dower except in what may remain after payment of plaintiff's debt and mortgage. The exception raises the question as to error of the Circuit Judge in his said holding.

We think that the Circuit Judge was not in error, for the following reasons: 1. It seems to us that the circumstances surrounding the transaction by which Martha Ponder conveyed this land to James Ponder abundantly demonstrates that the debt of $1,590 due by James Ponder to the plaintiff, Mrs. M. E. Groce, was for that amount of the purchase money of James to Martha, his mother; and inasmuch as that amount of the purchase money was secured by James by his mortgage to the plaintiff contemporaneously with the execution of Martha's deed to James Ponder for this tract of land, and, therefore, that the defendant, Julia Ponder, had no dower therein until the mortgage lien was removed. But, 2. Even if this debt of plaintiff cannot in strictness be called the purchase money secured by the mortgage, yet it belongs to that class of cases wherein, if an agreement is made simultaneously or connected with the purchase, that the legal seizin of the husband is to be so qualified that it shall not operate to exclude the payment of a sum of money in the nature of the purchase money, which agreement is carried into effect by the execution of the deed and mortgage as parts of a single transaction of the same date; that in that event the wife's

claim of dower will be subordinated to the lien thus fixed upon the land.    In the case of *Tibbetts* v. *Langley Mfg. Co.*, 12 S. C., at page 482, Mr. Justice Haskell, in discussing this subject, says: "In the leading case of *Greene* v. *Greene*, 1 Ohio, 244, though the rule of evidence is not in question, the law as to such agreements is thus expressed: 'If it be considered as real estate, it was acquired subject to a condition or agreement that qualified the estate of the husband, and the wife, when there is an agreement, *unless it were executed after her right attached,* would be bound thereby so as to exclude her right of dower.'    We would remark incidentally, that that is really all that is decided in *Pledger* v. *Ellerbe,* 6 Rich., 266.   See, also, on that subject, *Stoppelbeim* v. *Shulte,* 1 Hill, 200; *State* v. *Laval,* 4 McC., 336, and *Wilson* v. *McConnell,* 9 Rich. Eq., 500—showing the effect of the act of 1791 and the change which has occurred since the decision in *Bogie* v. *Rutledge,* 1 Bay, 312, and *Verree* v. *Verree,* 2 Brev., 211—doing away with the idea of instantaneous seizin in the mortgagee which left to the widow only an equitable right, and substituting in its stead the principle that a mortgage for the purchase money, or an agreement to that effect simultaneously or connected with the purchase, is part of the *res gestae,* and to that extent qualifies the legal seizin of the husband, and subordinates the wife's right" (of dower) "to the lien thus fixed upon the land."   The case of *Calmes* v. *McCrackin,* 8 S. C., 98, is not inconsistent with the foregoing doctrine; for in the case last cited, the agreement referred to was subsequent to the husband's seizin.    This language occurs in the case just cited: "Whereas, in the cases of *Clark* v. *Monroe,* 14 Mass., 351, and *Jackson* v. *Austin,* 15 Johns, 447, cited in the argument, the purchase money was paid by a third person, the title made to the purchaser and a mortgage by him at once given to the party advancing the money, it was properly held that the wife had no more claim to dower than if the conveyance being made to the husband, he had at once executed a mortgage to the grantor for the purchase money."    See, also, *Calhoun* v. *Calhoun,* 2 S. C., 283.   See,

also, 1 Scribner on Dower, page 273, where this language is used: "To this principle may also be referred the well settled doctrine that where a deed for lands is executed, and simultaneously therewith the purchaser gives back a mortgage upon the same lands to secure any proportion of the purchase money, he acquired as against the holder of the mortgage no such seizin as will entitle his wife to dower. The deed and mortgage, although in themselves separate and distinct instruments, nevertheless, under the circumstances above stated, are regarded as parts of the same contract. They take effect at the same time, and the giving of the deed upon one part and of the mortgage upon the other, is held to constitute but a single act, and to result in clothing the purchaser with the seizin for a transitory instant only. With but rare exceptions, this is the established doctrine of the American Courts. Nor is it necessary that the mortgage should be made directly to the vendor. It is sufficient if it be made to a third person for his benefit. And where the mortgage is of even date with the deed, and both instruments are recorded at the same time, the mortgage, although not made to the vendor, will be presumed to have been executed for the purchase money contemporaneously with the conveyance, and the right of dower of the wife of the mortgagor will therefore be limited to the equity of redemption. Nor does it make any difference that other premises of the mortgagor are included in the same mortgage as a further security for the purchase money. And where the vendor never had the legal title, but procured his own vendor to make a conveyance to the vendee of the former, and at the same time took from such vendee a mortgage to himself of the purchase money, the same principle applies. Thus, where A. had purchased land from B. by title bond, and after paying for the land, but before receiving a conveyance, sold to C., and by agreement a deed was executed by B. directly to C., and C. at the same time executed a mortgage to A. to secure the purchase money from C. to A., it was held that the wife of C. was not entitled to dower as against the mortgagee. So, where A. had given

his note to B. for a tract of land, and by agreement B. conveyed the land to C., who, therefor, and at the same time, conveyed another tract of land to A., and A. at the same time gave a mortgage thereon to B. as security for payment of the note of A., it was held that the momentary seizin of A. did not entitle his wife to dower in the premises thus conveyed to him by C.   And if the purchaser made a deed of trust to secure the purchase money, instead of a mortgage, it is equally effectual to exclude the dower of his wife.   The rule is the same, where a third person advances the consideration money for the lands, and takes from the vendee to whom they are conveyed by the vendor a mortgage to secure the repayment of the money thus advanced.   It has been determined in the Courts of several of the States that in cases of this description the right of dower of the wife of the vendee is subordinate to the lien of the mortgage." We must overrule the exceptions of the defendant.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.