9205

EVANS *ET AL.* v. PEGUES *ET AL.*

(86 S. E. 480.)

VENDOR AND PURCHASER. PRESUMPTION OF CONVEYANCE. ESTOPPEL. STATUTE OF FRAUDS. TRUSTS. RESULTING TRUSTS. FRAUD. SPECIFIC PERFORMANCE. DOWER.

1. VENDOR AND PURCHASER—PRESUMPTION OF CONVEYANCE.—Evidence that a vendor contracted to convey lands to a purchaser upon his performing certain agreements, and that at the time of making the contract he placed the purchaser in exclusive possession and control of the lands, and permitted him without objection to so hold, use and control the lands under claim of title for more than twenty years,

raises a presumption of a deed of conveyance from the vendor to the purchaser.

2. ESTOPPEL.—Where A, having contracted to convey certain lands to B, places B in exclusive possession and control, and permits him so to use and control them under claim of title as his own for fourteen years, and stands by and permits, without objection, a sale of the lands under execution against B, he is estopped as against an innocent purchaser for value at such sale, to deny B's title.

3. STATUTE OF FRAUDS—TRUSTS.—Admissions in written pleadings by the trustee in a suit with third parties, are admissible in evidence to establish the trust under the statute of frauds.

4. RESULTING TRUSTS.—Evidence that purchase money and consideration for a conveyance was paid by third parties, is sufficient to establish a resulting trust in their favor.

5. TRUSTS.—Where a trustee holds lands for benefit of third parties at the time of her death, her heirs at law take no interest therein.

6. FRAUD—DEEDS.—Finding that a transaction was free from fraud and misrepresentation on issue submitted to jury, affirmed.

7. VENDOR AND PURCHASER—SPECIFIC PERFORMANCE.—Where a contract to convey lands has been made and purchaser has fully performed his part of the contract, he and those claiming under him are entitled to specific performance of the contract against the heirs of the vendor.

8. DOWER.—Where a purchase money mortgage given by the husband of demandant in dower is paid off by a grantee to whom the husband conveyed the land, demandant is entitled to dower in the land without deduction for amount paid by the grantee on the purchase money mortgage.

9. DOWER.—After a husband becomes seized in fee he cannot enter into any agreement with other parties that will affect his wife's right of dower.

10. DOWER—VENDOR AND PURCHASER (By MESSRS. JUSTICES WATTS and FRASER).—Where a vendor contracts to convey lands to a purchaser upon the latter's performance of certain agreements, the time of such performance is the true time of alienation, at which the assessment of value of dower belonging to the vendor's wife should be made.

Before SEASE, J., Bennettsville, September, 1913.    Modi-fied.

Action by Minnie E. Evans, in her own right, and as administratrix of the estate of W. D. Evans, deceased, Alexina W. Evans, Hattie Evans Hodges, Nell Evans Thurmond, Samuel W. Evans, Frank P. Evans, Elizabeth G. Evans, Thomas S. Evans, Nan K. Evans, Margaret D.

Evans, by J. J. Evans, her guardian *ad litem,* and J. J. Evans in his own right and as guardian *ad litem* of Margaret E. Evans, against O. M. Pegues, W. L. Pegues, B. F. Pegues, Carrie Pegues Smith, F. W. Pegues, E. S. Pegues, S. O. Pegues, H. E. Pegues and Mrs. Lucy McClellan, and Miss Martha Pegues, Mrs. Ella L. Pegues and E. W. Pegues.

The facts are stated in the following Circuit decree:

This action was originally commenced by W. D. Evans, C. K. Pegues, W. L. Pegues, B. F. Pegues and John K. Pegues against O. M. Pegues and others; but subsequent to the commencement of this action all of the original plaintiffs except W. D. Evans withdrew from the action and conveyed any interest that they might have had to O. M. Pegues for himself and certain other defendants, they have no further interest in the action.

Subsequently, W. D. Evans died intestate, and his widow, Minnie E. Evans, was appointed administratrix of his such estate, and she, as administratrix and in her own right as heir at law of W. D. Evans, along with his children, the other plaintiffs, substituted as plaintiffs in lieu of W. D. Evans. Mrs. Minnie Evans, in addition to claiming an interest in the subject of action as administratrix and heir at law of W. D. Evans, also an interest in her own right as heir at law of Mrs. Sue S. Pegues, her deceased sister, the second wife of R. M. Pegues, had died intestate leaving no children.

It was contended by the heirs at law of W. D. Evans that he owned a one-third interest in the land described in the complaint and that O. M. Pegues and others were in possession thereof and had absorbed the rents and profits, and that the estate of W. D. Evans was entitled to recover one-third of said land and also were entitled to an accounting for rents and profits. The land described in the complaint was conveyed by E. H. Frost & Company in the year 1881 to R. M. Pegues, John K. Pegues and W. D. Evans in consideration of the sum of seven thousand ($7,000) dollars. No part

of it was paid in cash, but the three grantees executed their joint bond for the said sum of seven thousand dollars in favor of E. H. Frost & Company, and executed a pur-. chase money mortgage on said land to secure said bond in the sum of $7,000, and they took possession of the property at the end of the year 1881, and operated the same as a farm during the years 1882, 1883 and 1884 under the firm name of John K. Pegues & Company. Toward the end of the year 1884, the business of John K. Pegues & Company having become involved and the interest on the purchase money not having been paid except in part, and no part of the original purchase money of seven thousand ($7,000) dollars having been paid, the three grantees entered into a contract in writing whereby R. M. Pegues assumed the payment of the indebtedness of John K. Pegues & Company to the extent of eleven thousand ($11,000) dollars, and assumed the payment of the whole purchase price of the lands as purchased from E. H. Frost & Company; and W. D. Evans and John K. Pegues contracted and agreed to execute unto R. M. Pegues good and complete title to their respective interests in said property upon R. M. Pegues carrying out his part of the contract, and they thereupon put R. M. Pegues in exclu-. sive possession and control of the said lands, and he moved on the same with his family and resided there at all times afterwards until his death in 1909.

In 1894 R. M. Pegues, having become financially involved, had all of his property sold at public auction by the sheriff of Marlboro county under execution against R. M. Pegues, and this property was sold by Sheriff J. B. Green as the property of R. M. Pegues, and conveyed to Mrs. M. E. Stevenson, who, it appears, held the title temporarily for convenience for G. Walter McIver, or the Imperial Fertilizer Company of Charleston, and other creditors of R. M. Pegues. Subsequently Mrs. M. E. Stevenson conveyed the said land to G. Walter McIver and subsequently G. Walter McIver conveyed this land to F. Wilds Pegues, who subse-

quently conveyed the same to Mrs. Sue S. Pegues. In 1895, after the sale of this property at sheriff's sale as the property of R. M. Pegues, and after the paper title had gotten in G. Walter McIver, and after the contract had been entered into between G. Walter McIver and the family of R. M. Pegues to convey same back to R. M. Pegues, or his nominee, the last of the purchase money due under the bond and mortgage originally executed by R. M. Pegues, John K. Pegues and W. D. Evans to E. H. Frost & Company was paid, and the bond and mortgage was transferred in blank and delivered to R. M. Pegues, and same was found amongst his papers at the time of his death.

When this case was called for trial four issues were submitted to a jury by consent of all parties to the action, except the parties represented by Townsend and Rogers, and were framed by their attorneys and approved by the Court, as follows:

(1) Did W. D. Evans at the time of the beginning of this action have legal title to one-third of the land described in the complaint?

(2) Did R. M. Pegues pay the mortgage given for the purchase money of the land described in the complaint under an agreement such as is set out in the answer of O. M. Pegues and others, and was such an agreement made?

(3) Did Mrs. Sue S. Pegues at the time of her death hold title to this property described in the complaint in trust for the benefit of herself and the children of R. M. Pegues, as is alleged in the answer of O. M. Pegues?

(4) Was the release of the heirs of Mrs. Sue S. Pegues set up in the answer binding on any or all of the parties signing same? If binding upon any, name them.

The first issue, and the only legal issue, submitted to the jury was: Did W. D. Evans, at the time of the commencement of this action, own one-third interest in the lands described in the complaint? The jury answered this question in the negative, and motion to set aside such verdict

or finding is made on behalf of the heirs at law of W. D. Evans.

I refuse to grant the motion to set aside the verdict for a new trial on this legal issue because I am satisfied the finding of the jury is correct. While it is true that one-third of this land was conveyed to W. D. Evans in 1881, and while it does not appear that he ever executed a deed to his interest in such land, yet it does appear that in 1884 he entered into contract to execute a deed to his interest in said lands to R. M. Pegues and upon R. M. Pegues carrying out the agreements and covenants which R. M. Pegues had made in the same contract, and R. M. Pegues was placed in the exclusive possession and control of the property at the time of the execution of this contract, and he and those claiming under him, have held the property openly and notoriously, using the same as their own, up to the time of the death of R. M. Pegues and up to the time of the commencement of this action in 1910, and for more than 20 years, and during all this time W. D. Evans knew that R. M. Pegues, and those claiming under him, were exercising the exclusive rights of ownership over same, and claiming same as their own; and by reason of his inaction for more than 20 years, coupled with the possession and control of the property in all manner incident to ownership the law presumes that R. M. Pegues, and those claiming under him, had a grant from the State and a deed from W. D. Evans, and it presumes that W. D. Evans at the time of the commencement of this action had no interest in the property. In addition to this it does not appear from the testimony that when this property was sold in 1895 at sheriff's sale at public auction as the property of R. M. Pegues that W. D. Evans took any steps to guard or protect any interest that he may have had. It does not appear that he gave any notice that he had an interest in the property, and innocent third parties purchased the property as the property of R. M. Pegues and by successive conveyances the title finally went

in the name of Mrs. Sue S. Pegues, and that the family of
R. M. Pegues paid a very large sum as the purchase money
therefor, and W. D. Evans, and those claiming under him,
by reason of this, along with the other facts which raised the
presumption hereinbefore stated, are estopped from claiming
a title to the land. For these reasons I concur in the finding
of the jury on the legal issue, and a motion for a new trial
on same is refused.

All other issues submitted to the jury were in equity, and
were submitted for the enlightenment of the Court. It being
admitted on all sides that at the time of the death of Mrs.
Sue S. Pegues the paper title to the property was in her
name, and it being contended by her heirs at law, except the
children of R. M. Pegues, that Mrs. Sue S. Pegues was the ·
owner of the property, and it being contended by the children
of R. M. Pegues that she did not own the property in her
own right, but held same in trust for the benefit of herself·
and the children of R. M. Pegues for her life, and at her
death for the sole use and benefit of the children of R. M.
Pegues, the third issue, to wit: Did Mrs. Sue S. Pegues hold
the title to the land described in the complaint at the time of
her death in trust for herself and the children of R. M.
Pegues, as is alleged in the answer of O. M. Pegues and
others, was submitted to the jury and the jury answered in
the affirmative. It was contended by the defendants, chil-
dren of R. M. Pegues, that Mrs. Sue S. Pegues held the title
in trust, both as a special trust and a resulting trust. Writ-
ten evidence was offered by the plaintiffs themselves in the
record, or copy of record, in the case of *Wulborn* v. *Pegues*
to the effect that Mrs. Sue S. Pegues acknowledged in writ-
ing that she held the title to the property for the benefit of
herself and the children of R. M. Pegues. In addi-
tion to this a deed executed by the mother and all the
sisters and brothers of Mrs. Sue S. Pegues, and the
heirs of the deceased ones who were *sui juris,* with the excep-
tion of E. W. Pegues, who was at the time in the State of

Alabama, and Miss Martha Pegues, who was in the State Hospital for the Insane, containing recitals stating that Mrs. Sue. S. Pegues had held the property in trust, was put in evidence by the children of R. M. Pegues, and while there was no instrument in writing put in evidence whereby the trust was created, there was evidence in writing that such trust had been created, which was sufficient to go to the jury as to whether there was an express trust in this matter.

4    In addition to this it was proven beyond all question that the family of R. M. Pegues paid the purchase price for this property, which was put in the name of Mrs. Sue S. Pegues, and this fact, together with all the circumstances and other facts of the case, establish clearly to my mind that there was an implied or resulting trust, even if there was no express trust, and I concur with the jury in the finding that Mrs. Sue S. Pegues did hold the title to this property at the time of her death in trust for the benefit of the children of R. M. Pegues solely after her death.

5    This being so, her heirs at law could not inherit anything from her, but the property immediately vested under the trust in the children of R. M. Pegues. It was contended by certain of the heirs at law of Mrs. Sue S. Pegues, who had executed a release to O. M. Pegues of any interest they might have had in this property, that they were not bound by their deed; that their signature to same had been procured by misrepresentations and on account of their great confidence in and respect for R. M. Pegues, now deceased, I submitted this issue also to the jury and the jury found that all the parties who executed the deed were bound thereby, and this included all the heirs at law of Mrs. Sue S. Pegues except E. W. Pegues and Miss Martha Pegues. In view of the fact that the jury has found that Mrs. Sue S. Pegues held the property in trust for the children of R. M. Pegues at her death, this issue is unimportant because whether those who signed the deed were bound thereby or not, if Mrs. Sue S. Pegues held the property in trust, then

13—102

her heirs at law had nothing in same to convey, and it is immaterial whether they had executed a deed or not, but there was a total lack of evidence to sustain the charge of misrepresentation and fraud, and I concur fully in finding of jury that all of parties who executed the deed are bound thereby, and I am satisfied that the whole transaction was open, fair and free from deceit, misrepresention, concealment or fraud of any kind. I find, therefore, that there is evidence in writing contained in the answer of Mrs. Sue S. Pegues in the case of *Wulborn* v. *Pegues,* and contained in the deed from most of the heirs at law of Mrs. Sue S. Pegues to O. M. Pegues that Mrs. Sue S. Pegues acknowledged in writing that she held this property in trust for the benefit of herself and the children of R. M. Pegues during her life and for the sole benefit of the children of R. M. Pegues immediately upon her death, and as there is no evidence to the contrary, the contention of the children of R. M. Pegues that she held the property in special trust, as is alleged in their answer, is sustained by the greater weight of the evidence and is sufficient to decree a special trust in Mrs. Sue S. Pegues for the benefit of the children of R. M. Pegues; but even if this were not true, it is contended by the children of R. M. Pegues that Mrs. Sue S. Pegues held the property in trust by reason of the fact that the children of R. M. Pegues paid the purchase money to G. Walter McIver for the conveyance of property to F. Wilds Pegues and that such payment by them created a resulting trust in the property for the benefit of the children of R. M. Pegues. The overwhelming weight of the evidence showed to my mind that the purchase price for this land was paid by the family of R. M. Pegues, which brought the conveyance of same to F. Wilds Pegues, and F. Wilds Pegues, who took the title from G. Walter McIver, admitted same and never claimed that the property was his own, and there was a total lack of evidence to dispute this contention on the part of the children of R. M. Pegues.

This being so, the law implies that it was the intention of the parties who paid the money and the party who took the conveyance that the party holding the title should hold it in trust for the benefit of the children of R. M. Pegues, and thereby a resulting trust arises in favor of those who paid the purchase money, to wit, the children of R. M. Pegues. So even, if there had not been sufficient evidence to establish a special trust in this property for the benefit of the children of R. M. Pegues, yet a resulting trust arose in their favor from the fact that they paid all the purchase money, and the result of this case must be the same, whether there was both a resulting trust and a special trust, or whether there was only a resulting trust in their favor. For these reasons I concur in the finding of the jury that Mrs. Sue S. Pegues held the property at the time of her death in trust, as is alleged in the answer of O. M. Pegues and others; and inasmuch as Mrs. Sue S. Pegues held the legal title to this property in trust for the benefit of herself and the children of R. M. Pegues during her life and then to go absolutely to the children of R. M. Pegues, it follows as a necessary consequence that her heirs at law could not inherit this property from her. Therefore, the contention of certain of her sisters and brothers that they were entitled as heirs at law to a proportion of this property under the statute of distribution, cannot be sustained and the title must be confirmed in the children of R. M. Pegues.

Mrs. Minnie E. Evans in her complaint elects to claim, not as heir at law of W. D. Evans, but sets up a claim to dower, or thirds, in all lands of which W. D. Evans was seized and possessed during his life, and especially claims dower in the one-third interest in the lands described in the complaint which was conveyed in 1881 to R. M. Pegues, John K. Pegues and W. D. Evans. So the remaining question to be determined is: "Is Mrs. Minnie E. Evans, the widow of W. D. Evans, entitled to dower in the interest claimed by W. D. Evans in the lands described in the com-

plaint? As throwing some light on this subject, an issue was submitted to the jury as follows: Did W. D. Evans execute a contract such as is set up in the answer of O. M. Pegues and others, and did R. M. Pegues carry out and perform his part of such contract? The jury answered this inquiry in the affirmative; that is to say, the jury found that W. D. Evans in 1884 did enter into a contract with R. M. Pegues whereby he contracted and agreed to convey unto R. M. Pegues, and to make good and sufficient title to, all of his interest in the lands described in the complaint upon R. M. Pegues paying the debts of the firm of John K. Pegues & Company to the extent of $1,100, and paying the bond and mortgage of $7,000 and interest, which had been executed in 1881 by R. M. Pegues, W. D. Evans and John K. Pegues to E. H. Frost & Company; and further, that R. M. Pegues did perform and carry out his part of said contract, and did pay the whole of the purchase money for the land described in the complaint to E. H. Frost & Company. There can be no question of the correctness of the finding of the jury on this issue. The original contract, such as is set out in the answer of O. M. Pegues and others, signed and executed by all the parties thereto, was put in evidence, and the undisputed facts showed that all of the purchase money of $7,000, except possibly a small amount of interest which had become due before the execution of the contract, was paid by R. M. Pegues. The amount due on the bond and mortgage for the purchase price at the time of the execution of the contract in 1884 was nearly, if not quite, $10,000, and all of this was paid by R. M. Pegues, or procured to be paid by him, and the bond and mortgage, upon the payment of the last installment of same, was assigned in blank and delivered to R. M. Pegues, and was found amongst his papers after his death. Therefore, I concur in and adopt the findings of the jury on this issue, and with this finding of fact the legal question remains: Is Mrs. Minnie E. Evans, the widow of W. D. Evans, entitled to a dower in one-third

interest in said land? The law is well established that in
the admeasurement of dower the value of the land at time of
alienation must be taken as the true measure of the quantum
of the dower, to wit: the life use of one-third, or one-sixth
absolutely, of the value of the property at the time of aliena-
tion, together with interest from the death of the widow's
husband. It was alleged in the complaint of Mrs. Minnie E.
Evans that she was entitled to dower in one-third of the
land described in the complaint, and that she elected to take
dower in lieu of a distributive share. The answer of O. M.
Pegues and others denied that she was entitled to dower,
alleged that at the time of alienation by W. D. Evans that
the property was not worth more than $7,000, the original
purchase price, and that at the time of alienation under the
contract of 1884, no part of the purchase price of $7,000 had
been paid, and that a bond for same, secured by a mortgage
on the property, was outstanding in favor of E. H. Frost &
Company, and that R. M. Pegues paid all of said purchase
money bond and mortgage, and that the widow of W. D.
Evans was not entitled to dower as against said purchase
money. The law is well established that as against the
purchase money contracted to be paid by the husband the
wife cannot claim a dower. As was held in the case of
*Gross* v. *Ponder,* 63 S. C. 162, 41 S. E. 83: "Where a husband
buys lands upon which there is a mortgage which it is agreed
he shall pay, and the transaction is arranged by his taking a
deed to the land and at the same time giving a mortgage to
the holder of the first mortgage, which is marked satisfied, the
transaction being simultaneous, there was no such seizin in
the husband as will give the wife dower as against the mort-
gage lien." The whole theory of the law is based upon
the idea that until the purchase money is paid the husband is
not fully seized of the property, and until he pays for same
his wife cannot acquire a dower in something that he has
not fully owned. Bearing in mind the fact that no part of
the purchase money was paid by W. D. Evans, and that at

the time of the execution of the contract to convey to R. M. Pegues the whole of the purchase money was outstanding as a lien upon the property, and it being shown by the evidence in the case that the property was not worth at that time, 1884, more than the purchase money debt, and that all of same was paid by R. M. Pegues there could be no dower as against R. M. Pegues, and those claiming under him, in the widow of W. D. Evans.   At most, all she could claim absolutely would be one-sixth of the difference between the purchase money debt then outstanding and the value of the one-third interest which had been conveyed to W. D. Evans. The whole property was conveyed for $7,000, no part of which had been paid.   One-third thereof amounted to $2,333.33; and the value of the whole property, according to the evidence, did not exceed $7,000, one-third of which could not exceed $2,333.33.   Therefore, there was no difference between the value of the interest of W. D. Evans and the amount which he was required under the law to pay before he came seized of one-third, so as to permit his widow to claim dower therein.   For this reason, even if Mrs. Minnie E. Evans is entitled to dower in one-third of the lands described in the complaint, which had been conveyed to her husband, W. D. Evans, and in which she had never renounced her dower, there is nothing as against R. M. Pegues and those claiming under him, out of which he could secure dower.   In other words, if she is entitled to dower at all, it would be one-sixth of the difference between $2,333.33 and $2,333.33, which would be nothing.

In addition to the foregoing there is another complete answer under the facts in this case to the claim of dower on the part of Mrs. Minnie E. Evans.   While the legal title was taken from E. H. Frost & Company to R. M. Pegues, John K. Pegues and W. D. Evans jointly, the whole purchase price was paid by R. M. Pegues, and under the law, in view of their contract entered into in 1884, coupled with the fact that the whole purchase price was paid by R. M. Pegues, a

trust would result in the three grantees jointly for the benefit of R. M. Pegues, and the holding of the title by the three grantees jointly under this state of facts would render the deed in their name a trust deed for the benefit of R. M. Pegues immediately upon his paying all the purchase price. The heirs at law of the trustee cannot inherit the title to the land from the trustee, nor can the widow of the trustee secure a dower in property held in trust by her deceased husband. Therefore, in any view of the case it seems to me that Mrs. Minnie E. Evans has no dower in the land described in the complaint. It may be contended that, the purchase money having been paid, and it not being an outstanding obligation as against the three original grantees, the dower right would not be barred. It could not for a moment be contended that if the purchase money was still due to E. H. Frost & Company that Mrs. Evans could claim a dower as against E. H. Frost & Company. Does the fact that the purchase money obligation has been transferred, either by transfer in its ordinary acceptation or final payment on the part of one of the grantees, make any difference in the law? The mortgage was transferred and assigned in blank upon the payment of the last amount due thereon, and was found amongst the papers of R. M. Pegues. A man cannot hold a mortgage on his own property, and I am satisfied that the mortgage for the purchase money has been paid in full and is not an outstanding obligation against the property which could be enforced, nor is it so contended by the children of R. M. Pegues. Therefore, I conclude and concur with the jury in their finding that the whole purchase money has been paid, or procured to be paid, by R. M. Pegues, and for all general purposes such mortgage is extinct; but for the purpose of protecting the property against a dower claim on the part of the widow of one of the three original grantees, who paid nothing, as against those claiming under another one of the grantees, who paid the whole of the purchase price, equity will keep alive the lien of the

mortgage to protect the estate against such claim of dower. And for the purpose of determining whether Mrs. Minnie E. Evans is entitled to dower in the property, the mortgage having been paid entirely by R. M. Pegues, and no part of same having been paid by W. D. Evans, the situation is exactly the same in equity as if the mortgage still remained in the hands of the original mortgagee, to wit, E. H. Frost & Company.

There is one more equitable issue which is properly before the Court and should be settled, which may not be of much practical importance in view of the fact that the jury has found, and I have concurred with them in such finding, that W. D. Evans did not own one-third interest in the land described in the complaint at the time of the commencement of this action. Under the facts in this case, even if W. D. Evans did hold the legal title to one-third interest in the property described in the complaint at the time of the commencement of this action, I am clearly of the opinion that the equitable title to the one-third interest originally conveyed to W. D. Evans is now in the defendants, O. M. Pegues and others, children of R. M. Peagues. W. D. Evans made his contract to convey his legal title upon the payment by R. M. Pegues of the purchase money. Said purchase money was paid entirely by R. M. Pegues, who carried out his contract completely and fully. The contract to convey on the part of W. D. Evans was clear and beyond all question as to its terms and was in writing. He has failed to carry out his part of the contract notwithstanding that the other party to the contract, R. M. Pegues, carried out his part of the contract fully, and those claiming under R. M. Pegues, as R. M. Pegues was during his life at all times after the performance of the contract, are entitled to specific performance of the contract. They are entitled to conveyance of any interest that W. D. Evans may have had in the property, and even though the legal issue should have been decided against the contention of the children of R. M.

Pegues, they would still be entitled on the equity side of the Court to have their equitable title decreed and a conveyance thereof made to them.

It is, therefore, on motion of Edward McIver, W. P. Pollock and J. W. LeGrand, attorneys for O. M. Pegues and others, defendants, children of R. M. Pegues, ordered, adjudged and decreed:

1. That the title to the property described in the complaint be, and the same is hereby, confirmed and decreed in said defendants.

2. That the deed from G. Walter McIver to F. Wilds Pegues, and the deed from F. Wilds Pegues to Mrs. Sue S. Pegues be, and the same are hereby, adjudged and decreed to have been in trust for the benefit of the children of R. M. Pegues upon the death of the said Mrs. Sue S. Pegues.

3. That Mrs. Minnie E. Evans is not entitled to dower in any part of the lands described in the complaint.

4. That the deed of conveyance executed by the heirs at law of Mrs. Sue S. Pegues to O. M. Pegues be, and the same is hereby, declared to be valid.

5. That the defendants, E. W. Pegues and Miss Martha Pegues, appearing herein by her guardian *ad litem*, be, and they are hereby, decreed to have no interest in the property described in the complaint.

6. That the complaint be dismissed with costs.

The following are the exceptions of the plaintiffs-appellants:

1. The plaintiffs except to his Honor's order submitting issues to the jury over their objections, as to whether there was a trust created under which Mrs. Sue S. Pegues held the property in dispute.

2. They except to the ruling of his Honor in allowing O. M. Pegues and other defendants to testify that there was such a trust; it being submitted that the trust being an

express trust as to real estate, could only be proved by writing.

3. The plaintiffs except to the ruling of his Honor allowing the defendant, F. W. Pegues, to testify as to the transaction between him and Mrs. Sue S. Pegues, on the ground that the said transaction could not be detailed under the 438th section of the Code of 1912; and further, that it was proving an express trust in real estate by parol testimony. The Court erred, it is respectfully submitted, in stating that if it was not the law, that parol testimony could be offered under the circumstances of this case to prove the trust, that it ought to be the law.

4. The Court erred further in refusing to charge, as requested by the plaintiffs, that they should answer the first issue "yes," and further in refusing the plaintiffs' request to charge that there is no competent evidence to establish the trust relation alleged in the answer of O. M. Pegues, and the answer to the third interrogatory should be "no."

5. The Court erred further in refusing to charge the fourth request of the plaintiffs, that the deed from R. M. Pegues *et al.,* is invalid on its face as to the parties represented, for the reasons set forth in the said request.

6. The Court erred in not charging the plaintiff's eighth request to charge.

7. The Court erred further in charging the defendant's fourth request, it being submitted that it was misleading and was not applicable to the facts in this case; the fact being admitted, and the jury finding, that the alleged contract to purchase made by R. M. Pegues was not complied with until 1895, and no time could run, therefore, until such purchase was completed and no presumption of a grant or deed could arise.

8. The plaintiffs except to the submission by his Honor of the fourth issue, to wit, the question of the binding force of the alleged release, that being an issue of law and not of fact.

9. Plaintiffs except to the decree of his Honor in overruling the motion to set aside the verdict, on the ground that there was no legal evidence to sustain the findings on the first, third and fourth issues.

10. The plaintiffs further except to the finding of his Honor that there was sufficient written evidence upon which to base an express trust.

11. The plaintiffs-appellants do except to the finding of his Honor that there was any express trust or resulting trust proved by competent evidence.

12. The plaintiffs further except to his Honor's decree in holding that the alleged release of certain heirs of Mrs. Sue S. Pegues was binding and valid, when on its face it was invalid, in that it was not executed by all who were to sign and was witnessed by two of the beneficiaries.

13. The plaintiffs further except to the holding of his Honor that the purchase money of this land from G. Walter McIver was paid by the children of R. M. Pegues and that no part thereof was paid by Mrs. Ella L. Pegues; and in holding that there was a resulting trust, under the evidence, to the children of R. M. Pegues, it being wholly contrary to the evidence.

14. The plaintiff, Minnie E. Evans, excepts to the holding of his Honor that she is not entitled to dower in one-third of the said lands, and in holding that although W. D. Evans was the owner in fee during coveture of one-third of the said lands, that the fact that it was covered by a bond and mortgage for the purchase money ousted her right of dower, the bond and mortgage being equal to the value of the land when the contract was made to convey it; it being respectfully submitted that the bond and mortgage, under the finding of the jury, was paid and discharged in 1895, and that there was nothing then that was paramount to the claim of dower of Mrs. Minnie E. Evans, and she should have been adjudged to be entitled to dower.

15. The Judge erred, it is respectfully submitted, in holding that there would be a resulting trust in J. K. Pegues and W. D. Evans for R. M. Pegues, which would bar dower; whereas, the title to the land had been in J. K. Pegues, W. D. Evans and R. M. Pegues for three years before the contract of 1884, and the inchoate right of dower had vested before any contract was made, subject only to the payment of the purchase money mortgage, and when that was paid and discharged the right of dower was complete in the whole. The Judge erred, it is respectfully submitted, in not holding that Mrs. Minnie E. Evans was entitled to dower in any amount to be admeasured to her, and it was not the province of Court to hold what the value was to Mrs. Evans if entitled to have her dower admeasured, and if there was any outstanding encumbrance she had the right to redeem in so far as her dower was concerned, and by his assumption to pass upon the value of the property and determine the right on the basis of that question, he denied her the right to have her dower admeasured in kind and then to redeem.

16. The Court erred further in holding that the value of the land in 1884 was only $7,000, and also in holding that the value at that time determined the question of the right of dower and not the value of the land at the date of conveyance, which was in 1895, if a conveyance were made, and also for the reason that under the contract of 1884 R. M. Pegues was not entitled to a conveyance until he perfected his part of the contract, and under the finding of the jury and the evidence in this case, that was not done until 1895, and there is no evidence to sustain the Court's holding that the value of the land by that time was only $7,000; but, on the other hand, it was the duty of the Court to order the dower admeasured and the value determined by commissioners under the statute law of South Carolina, and the fact that there was an encumbrance against it could not defeat the right to have this dower and to redeem.

17. The Court erred in not holding that the purchase money mortgage was not only paid in full, as shown by the finding of the jury, and in pursuance of the contract, but that it was presumed clearly to be paid, and, therefore, could not be set up, directly or indirectly, to defeat the claim of dower.

Grounds of appeal of E. W. Pegues and Martha Pegues, defendants, are:

1. Because his Honor erred in submitting to the jury the question as to whether or not Mrs. Sue S. Pegues held the land in dispute, in trust or for her own benefit over protest of counsel, who contended that same was a bald legal question, which should have been decided by the Court, without the intervention of a jury, and the said question should not have been jumbled and confused before a jury, as it was, with the legal issues in the case. And his Honor further erred in adopting and following the finding of the jury in this particular.

2. Because his Honor erred in allowing several different witnesses to testify to the alleged declarations of Sue S. Pegues, for the purpose of establishing a trust in her, for the benefit of said witnesses.

3. Because his Honor erred in holding that the testimony showed that Mrs. Sue S. Pegues ever acknowledged in writing that she held the title to the property, in dispute, for the benefit of the children of R. M. Pegues.

4. Because his Honor erred in holding that there was sufficient testimony to establish an express trust in the said Sue S. Pegues, in the land in question.

5. Because his Honor erred in holding that even if there was no express trust, that there was an implied or resulting trust in favor of the children of R. M. Pegues; whereas, it is respectfully submitted that the testimony shows the contrary, in that it is established by the testimony that the major portion of the purchase money, when this land was conveyed

to her, was paid by the said Sue S. Pegues and that the balance was either paid by her husband for her, or with money which was borrowed by her.

6. Because his Honor erred in holding that there was an expressed or resulting trust, when the testimony showed that there was neither.

7. Because his Honor erred in holding and deciding that the defendants, E. W. Pegues and Martha Pegues, have no interest in the property described in the complaint.

8. Because his Honor erred in holding that Mrs. Sue S. Pegues, at the time of her death, held a title in the land, described in the complaint, in trust for the benefit of the children of R. M. Pegues, and should have held that she held the title in fee simple.

The defendant, Mrs. Ella L. Pegues, adopts as her exceptions the exceptions of the plaintiffs, as follows, to wit:

Exceptions one, two, three, five, eight, nine, ten, eleven, twelve and thirteen; and all the exceptions of E. W. Pegues and Miss Martha Pegues, except the seventh.

*Messrs. Stevenson, Stevenson & Prince,* for plaintiffs-appellants, submit: *Proof of trusts must be in writing:* Civil Code 1912, sec. 3676; 78 S. C. 490; 1 Strob. Eq. 370; 5 J. C. R. 1; 1 McC. Ch. 120; 12 Rich. Eq. 214, 215; 4 S. C. 152; 2 Stats. 526. *Sufficiency of writing:* 28 A. & E. Enc. of L. 879; 65 Me. 500; 107 Mass. 82; 47 N. J. L. 477; 1 Ark. 447; 5 Johns. Ch. 1; 7 L. R. A. (N. S.) 1125; 1 Lewin, Trusts 14; 11 S. C. 34; 194 Fed. 1007; 95 N. Y. 403; 47 Am. Rep. 53; 151 N. Y. 282; 45 N. E. 876; 37 L. R. A. 305; 153 Ind. 403; Perry, Trusts, sec. 83; 98 Ill. 628. *Was deed a sufficient declaration of trust? It bound only those signing it:* Harper's Eq. 282; 28 Enc. of L. 877, 878; Tiffany & Bullard, Trusts 355, 356; 19 Beaver 330; 153 Ind. 401; 16 Mass. 221; 119 Ill. 626; 44 N. J. 156; 5 Johns. Ch. 13; 9 Am. Dec. 256; 53 N. J. Eq. 275; 167 Ill. 64; 66 Md.

249; 1 Greenleaf Ev. 266; 4 Kent. Com. 305. *Deed wit-
nessed by persons taking an interest 'thereunder:* Code, sec.
3567; 13 Stats. 312; Code Civil Proc., secs. 400, 438; 13
Stats. 377; 12 Stats. 700; 79 Ala. 50; 125 Ala. 391; 94
Tenn. 38; 24 Neb. 188; 9 Baxter 607; 26 Conn. 199; 3
Strob. 590; Civil Code 3453; 5 Stats. 255; 1 Rich. 534; 10
Rich. 518; Cheves L. 272; 9 A. & E. Enc. of L. 148; 79 S.
C. 363; 21 A. & E. Enc. of L. 568; 46 L. R. A. 723; 89 S.
C. 349.   *Deed not signed by all intended grantors an incom-
plete paper:* 9 S. C. 252; 19 S. C. 215; 3 S. C. 330; 9 S. C.
234; 62 S. C. 194; 88 S. C. 437.   *Effect on dower of pay-
ment of outstanding purchase money mortgage:* 27 S. C.
562.   *Right of dower:* 9 Rich. Eq. 500; 10 *Ib.* 285.   *Cer-
tainly in surplus:* 1 Bail. Eq. 65, 66; 10 A. & E. Enc. of L.
68; 13 Mass. 229; 14 Allen 188; 8 S. C. 99; 12 S. C. 465;
49 S. C. 436; 17 S. C. 558.   *No subrogation to defeat
dower:* 29 S. C. 508.   *Right to dower, seizin, etc.:* 34 S. C.
191; 59 S. C. 57; 59 S. C. 222; 75 S. C. 471.   *Not estopped
by warranty:* 87 S. C. 54; 89 S. C. 177; 16 S. C. 91.   *Result-
ing trust:* 19 S. C. 134.

*Mr. J. K. Owens,* for Ella L. Pegues, defendant-appel-
lant, submits: *Express trust can not be established by parol:*
52 S. C. 393; 57 S. C. 155; 76 S. C. 490.   *Deed not wit-
nessed by competent witnesses:* Civil Code, sec. 3453; 13
Cyc. 558; 1 Devlin, Deeds (3d ed.) 259; 79 Ala. 49; 58
Ohio St. 86; Cheves 272; 1 McM. 376; 29 S. C. 170.
*Resulting trusts:* 32 S. C. 595; 78 S. C. 496; 2 Devlin,
Deeds (3d ed.) 992.

*Messrs. Townsend & Rogers,* for E. W. Pegues and
Martha Pegues, appellants, submit: *Express trust can not
be shown by parol:* 52 S. C. 393; 57 S. C. 163; 12 Rich. Eq.
213; 78 S. C. 496.   *When recitals operate as estoppel:* 6
Cal. 149; 65 Am. Rep. 496; 3 Dev. (N. C.) 108; 11 S. C.
29.   *Resulting trusts:* 27 A. & E. Enc. of L. 299; 19 S. C.

127, 135; 78 S. C. 494; 56 S. C. 83; 90 S. C. 583; 93 S. C. 450; Hill on Trustees 164; Perry on Trusts 143; 16 Cal. 350.   *Not estopped by acts of others:* 40 Ohio 63; 70 S. C. 194; 20 A. & E. Enc. of L. 461; 27 *Ib.* 322; 9 S. C. 234. *Incomplete instrument:* 19 S. C. 212; 3 S. C. 330; 9 S. C. 204.

*Mr. Edward McIver,* for respondents, cites: *As to presumption of conveyance:* 78 S. C. 155; 1 Hill Ch. 376; 86 S. C. 295; 2 Rich. 19; 48 S. C. 489, 490; 81 S. C. 347; 50 S. C. 168; 80 S. C. 112.   *Resulting trusts:* 75 S. C. 237; 78 S. C. 494; 57 S. C. 163; 23 S. C. 251; 59 S. C. 294. *Express trust:* Statute of Frauds, 1 McC. Ch. 119, 130. *Incomplete paper:* 3 S. C. 330; 9 S. C. 234; 19 S. C. 211; 39 S. C. 14; 62 S. C. 193.   *Subrogation of purchaser paying mortgage to rights of mortgagee against subsequent claim of dower:* 31 S. C. 206; 75 S. C. 249; 40 S. C. 413, 457.

*Mr. J. W. LeGrand,* also for respondents, submits: *W. D. Evans was never seized in land:* 63 S. C. 162; 31 S. C. 206. *Resulting trust:* 75 S. C. 245; 39 Cyc. 36; 56 S. C. 83; 78 S. C. 494; 23 S. C. 251; 59 S. C. 294.   *Laches:* 80 S. C. 114; 48 S. C. 47; 88 S. C. 191; 2 Hill's Ch. 511; 11 Rich. 429; 3 S. C. 254; 26 S. C. 179; 1 S. E. 711; 38 S. C. 394; 17 S. E. 136; 40 S. C. 179; 18 S. E. 257; 48 S. C. 291; 26 S. E. 657; 48 S. C. 472; 26 S. E. 787; 78 S. C. 155.

September 30, 1915.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

There is only one respect in which the judgment of the Circuit Court must be reversed, to wit, as to the right of Mrs. Minnie E. Evans to claim dower.

The land described in the complaint was conveyed by E. H. Frost & Company in 1881 to W. D. Evans, R. M. Pegues and John K. Pegues, in consideration of $7,000, no part of

which was paid in cash, but the said grantees executed a mortgage of the premises to secure the purchase money.

The grantees entered into possession of the land, and operated a farm during the years 1882, 1883 and 1884, under the firm name of John K. Pegues & Company.

At the end of the year 1884, no part of the purchase money having been paid, the three grantees entered into a contract in writing, whereby the said R. M. Pegues assumed the payment of the indebtedness of John K. Pegues & Co., to the extent of $11,000, and assumed payment of the whole purchase money of the lands conveyed by E. H. Frost & Co.

The mortgage executed by the grantees to E. H. Frost & Co. was afterwards paid in full.

The respondents rely upon the case of *Groce* v. *Ponder,* 63 S. C. 162, 41 S. E. 83, in which it was held that where a husband buys lands upon which there is a mortgage which it is agreed he shall pay, and the transaction is arranged by his taking a deed to the land, and at the same time giving a mortgage to the holder of the first mortgage, which is marked satisfied, *the transaction being simultaneous,* there is no such seizin in the husband, as will give the wife dower against the mortgage lien. (Italics added.)

That case was properly decided, for the reason that the agreement under which the transaction took place, was made before the husband became seized of the fee in the land.

In the present case, the mortgage executed in favor of E. H. Frost & Co. for the purchase money was paramount to the right of Mrs. Evans to claim dower, but that mortgage has been paid in full under an agreement between the grantees, each of whom was liable for the purchase money.

After the husband becomes seized in fee, he can not enter into any agreement with other parties that will affect his wife's right of dower. *Grube* v. *Lilienthal,* 51 S. C. 442, 29 S. E. 230.

14—102

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, in so far as it decides that Mrs. Minnie E. Evans is not entitled to dower in the one-third of the lands, of which her husband was seized in fee in 1881, and that in all other respects, for the reasons therein stated, the judgment of the Circuit Court is affirmed.

MR. JUSTICE GAGE concurs in the opinion announced by the CHIEF JUSTICE.

MR. JUSTICE HYDRICK concurs in the result.

MR. JUSTICE WATTS, *concurring.* I concur in the opinion of the CHIEF JUSTICE that the Circuit Court must be reversed as to the claim of Mrs. Minnie E. Evans to claim of dower. She is entitled to dower as her husband became seized in fee. The mortgage was extinguished and R. E. Pegues did not acquire title until 1894, as he did not carry out the terms of purchase until then, and this is the true time of alienation by W. D. Evans; and the assessment of dower to Mrs. Minnie E. Evans should be fixed at this time.

MR. JUSTICE FRASER, *concurring.* I concur with MR. JUSTICE WATTS as to the dower of Mrs. Evans, but do not think she is bound by the deed which only some of the grantors signed.